1 | Roderick G. Dorman (SBN 96908)
rdorman@mckoolsmith.com
2 | MCKOOL SMITH P.C.
300 South Grand Avenue, Suite 2900
3 | Los Angeles, California 90071
Telephone: (213) 694-1200
4 | Douglas A. Cawley (TX SBN 04035500) (Pro Hac Vice)
dcawley@mckoolsmith.com
5 | MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
6 | Dallas, Texas 75201
Telephone: (214) 978-4000
7 | Joshua W. Budwin (TX SBN 24050347) (Pro Hac Vice)
jbudwin@mckoolsmith.com
8 | John B. Campbell (TX SBN 24036314) (Pro Hac Vice)
jcampbell@mckoolsmith.com
9 | Leah Buratti (TX SBN 24064897) (Pro Hac Vice)
lburatti@mckoolsmith.com
10 | R. Mitch Verboncoeur (TX SBN 24105732) (Pro Hac Vice)
mverboncoeur@mckoolsmith.com
11 | MCKOOL SMITH P.C.
300 W. 6th Street, Suite 1700
12 | Austin, Texas 78701
Telephone: (512) 692-8700

Attorneys for Plaintiff
ROVI GUIDES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROVI GUIDES, INC., ) | Case No. 2:19-cv-00275-AG-FFM |
| ) | |
| Plaintiff, ) | **ROVI'S OPPOSITION TO COMCAST'S MOTION TO STAY** |
| v. ) | |
| ) | |
| COMCAST CORPORATION; COMCAST ) | Judge: Andrew J. Guilford |
| CABLE COMMUNICATIONS, LLC; ) | |
| COMCAST CABLE COMMUNICATIONS ) | Hearing Date: August 19, 2019 |
| MANAGEMENT, LLC; COMCAST ) | |
| BUSINESS COMMUNICATIONS, LC; ) | Time: 10:00 a.m. |
| COMCAST HOLDINGS CORPORATION; ) | |
| COMCAST SHARED SERVICES, LLC; ) | Courtroom: Santa Ana Div., 10D |
| COMCAST OF SANTA MARIA, LLC; and ) | |
| COMCAST OF LOMPOC, LLC, ) | |
| ) | |
| Defendants. ) | |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL STATEMENT .........................................................................2

    A.   Comcast licenses Rovi's portfolio, renews its license, then holds out when its renewed license expires—forcing Rovi to file multiple cases. ...................................................................................2

    B.   The reasons Comcast has given this Court and the public for not taking a license from Rovi are false. ..........................................5

III.  LEGAL STANDARD ...............................................................................6

IV.   ARGUMENT.............................................................................................7

    A.   A stay unduly prejudices Rovi and presents a tactical advantage to Comcast. .............................................................................7

    B.   A pre-filing, pre-institution stay is premature...........................9

    C.   This case is not at an early stage when the multi-year, multi-suit Rovi/Comcast dispute about this same technological subject matter is considered......................................................................10

    D.   A stay of the entire action will only prolong this case with no benefit of simplifying the issues. ...........................................11

    E.   The alternative relief Rovi proposes is the fair and appropriate disposition of Comcast's motion to stay................................15

V.    CONCLUSION ......................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carl Zeiss A. G. v. Nikon Corp.*,
  Case No. 2:17-CV-07083, 2018 WL 1855525 (C.D. Cal. Feb. 9, 2018) ............... 10

*Carl Zeiss A.G. v. Nikon Corp.*,
  Case No. 2:17-CV-07083, 2018 WL 5081479 (C.D. Cal. Oct. 16,
  2018) ......................................................................................................... 7

*Certain Digital Video Receivers and Hardware and Software
  Components Thereof*,
  Inv. No. 337-TA-1001 ................................................................................ 3

*Certain Digital Video Receivers and Related Hardware and Software
  Components*,
  Inv. No. 337-TA-1103 ................................................................................ 4

*Certain Digital Video Receivers, Broadband Gateways, and Related
  Hardware and Software Components*,
  Inv. No. 337-TA-1158 ................................................................................ 4

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
  Case No. 3:06-cv-4206, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) .................... 9

*DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*,
  Case No. 5:15-cv-1362, 2015 WL 12859346 (N.D. Cal. Oct. 13,
  2015) ......................................................................................................... 13

*e.Digital Corp. v. Dropcam, Inc.*,

    Case No. 3:14-cv-4922, 2016 WL 658033 (N.D. Cal. Feb. 18, 2016) ...................7

*Ethicon, Inc. v. Quigg*,

    849 F.2d 1422 (Fed. Cir. 1988) ...............................................................6

*Fulfillium v. ReShape Medical LLC*,

    Case No. 8:18-cv-1265, Dkt. No. 120 at 6 (C.D. Cal. May 27, 2019)...................12

*Hologram USA, Inc. v. VNTANA*,

    3D, LLC, Case No. 2:14-cv-9489, 2015 WL 12791513 (C.D. Cal.

    Dec. 7, 2015)..............................................................................12

*Intellectual Ventures I LLC v. Toshiba Corp.*,

    Case No. 1:13-cv-453, 2015 WL 3773779 (D. Del. May 15, 2015)........................7

*KFx Med., LLC v. Stryker Corp.*,

    Case No. 3:18-CV-1799, 2019 WL 2008998 (S.D. Cal. May 7, 2019) ...................9

*Phillips v. AWH Corp.*,

    415 F.3d 1303 (Fed. Cir. 2005) ..............................................................12

*Polaris Innovations Limited v. Kingston Technology Company, Inc.*,

    Case No. 8:16-cv-00300, 2016 WL 7496740 (C.D. Cal. Nov. 17,

    2016) ......................................................................................7

*Realtime Data LLC v. Actian Corp.*,

    Case No. 6:15-CV-463, 2016 WL 3277259 (E.D. Tex. June 14, 2016) ..................8

*Rovi Guides, Inc. v. Comcast Corp.*,

    Case No. 2:18-cv-253 (C.D. Cal.) ............................................................4

*Rovi Guides, Inc. v. Comcast Corp.*,

    Case No. 2:19-cv-275 (C.D. Cal.) ............................................................4

*Rovi Guides, Inc. v. Comcast Corp.,*

    Case No. 2:19-cv-3096 (C.D. Cal.) ................................................................. 4

*Rovi Guides, Inc. v. Comcast Corp.,*

    Case No. 1:16-cv-9278 (S.D.N.Y.) ................................................................. 3

*Rovi Guides, Inc. v. Comcast Corp.,*

    Case No. 1:16-cv-9826 (S.D.N.Y.) ................................................................. 3

*SAS Inst., Inc. v. Iancu,*

    138 S. Ct. 1348 (2018) ................................................................................. 11

*Speakware, Inc. v. Microsoft Corp.,*

    Case No. 8:18-cv-01293, 2019 U.S. Dist. 2019 ............................................ 6

*Speakware, Inc. v. Microsoft Corp.,*

    Case No. 8:18-cv-01293, 2019 WL 1878350 (C.D. Cal. Feb. 21,

    2019) ............................................................................................................... 9

*Uniloc 2017 LLC v. Microsoft Corporation,*

    Case No. 8:18-cv-2053, Dkt. No. 65 (C.D. Cal. April 29, 2019)

    (Guilford, J.) ................................................................................................... 9

*Veveo, Inc. v. Comcast Corp.,*

    Case No. 1:18-cv-10056 (D. Mass.) ............................................................. 4

**STATUTES**

28 U.S.C. § 1659 ..................................................................................................... 3

35 U.S.C. § 101 ..................................................................................................... 14

**OTHER AUTHORITIES**

Rule 42(b) of the Federal Rules of Civil Procedure ............................................. 15

## I.   INTRODUCTION

Comcast's motion for a stay should be denied. In these unique circumstances, there is a much better, fairer, and more legally correct way to accommodate the competing needs and desires of both parties—Comcast's desire to avoid duplicative work between this Court and the PTAB and Rovi's need to have its patent claims proceed expeditiously to judgment that are not the subject of an instituted *inter partes* review (IPR) proceeding. Rovi's proposal is fair to both sides. Comcast's requested relief is not.

Comcast's motion is silent about the facts that demonstrate Rovi's need to have its patent claims in this action proceed expeditiously to judgment and the prejudice Rovi will suffer if it does not. Comcast's prior license with Rovi expired on April 1, 2016. Comcast, unlike every other Tier 1 cable and satellite TV provider, did not renew its license and kept practicing Rovi's patented technology without permission. Comcast has now been adjudged a serial infringer of Rovi's patents by the ITC. Normally, one or more exclusion orders and cease and desist orders from the ITC would result in a business settlement, the payment of a licensing fee, and the cessation of litigation between the parties. Not here. Comcast, with its inordinate free cash flow and its contempt for both the patent rights of others and the interests of its own customers, chose instead to eliminate useful features covered by the infringed patents from its X1 product and keep litigating. Indeed, rather than pay the same license fee that all its competitors pay for the Rovi portfolio, Comcast chose to eliminate remote DVR recording and highlighting search results to guide users through searching the X1 Platform with their remote control keypads.

The imminent threat of a damages award is important to driving Comcast to take a license that is consistent with the rest of the industry. Although Rovi has filed six district court lawsuits toward that end, the district court cases seeking damages for infringement of the patents asserted in Rovi's three ITC actions against Comcast have all been stayed pursuant to a mandatory stay statutorily available upon a respondent's request (which Comcast has exercised). In the other district court cases, including this one, Comcast has stayed or seeks to stay the entire proceeding due to the pendency of IPRs and protract the proceedings, ostensibly hoping that this much smaller company will give up the fight.

For all the reasons expressed below, the better, fairer and more legally correct way to accommodate the competing needs of the parties is for the Court to deny Comcast's motion without prejudice at this time. If Comcast files its promised IPR petitions on all asserted claims and if an IPR on all claims of one or more patents is subsequently instituted by the PTAB, the Court with much more pertinent information than it has now should then consider how best to proceed with this case to be fair to both parties. Rovi's detailed proposal for that evaluative process is set forth below in Section IV. E.

## II.   FACTUAL STATEMENT

### A.   Comcast licenses Rovi's portfolio, renews its license, then holds out when its renewed license expires—forcing Rovi to file multiple cases.

In 2004, when Rovi's US patent portfolio was less than half the size it is today, Comcast paid Rovi over $250 million for a license to Rovi's patent portfolio, and then renewed the license in 2010. Rovi's Am. Compl. ¶¶ 2, 57-60. Prior to the license's

1   expiration on March 31, 2016, Rovi and Comcast began negotiating an extension.

2   Rovi had secured license extensions with every other major Pay-TV provider on the

3   market, including AT&T, Charter, DISH, and Verizon. *Id*. ¶¶ 8, 51. But Comcast held

4   out. After numerous meetings and despite Rovi providing more than 50 claim charts

5   showing how Comcast used Rovi's patents, Comcast refused to pay the same

6   reasonable rates as every one of Comcast's competitors.

7       On April 1, 2016, Rovi filed the first two of nine enforcement actions (so far)

8   against Comcast when it filed two district court actions in the Eastern District of

9   Texas (which were later transferred to the Southern District of New York). *Id*. ¶ 89.

10  *See Rovi Guides, Inc. v. Comcast Corp.*, Case No. 1:16-cv-9278 (S.D.N.Y.)

11  ("the -9278 case"); *Rovi Guides, Inc. v. Comcast Corp.*, Case No. 1:16-cv-9826

12  (S.D.N.Y.) ("the -9826 case"). The -9826 case, which seeks damages for infringement

13  of the same patents asserted in the first ITC action, is currently stayed pending the

14  final resolution of the first ITC action pursuant to a stay that is mandatory if requested

15  by the ITC respondent (which Comcast exercised), while the -9278 case is partially

16  stayed and proceeding on certain claims. *Id*.; *see also* 28 U.S.C. § 1659.

17      On April 6, 2016, Rovi filed the first enforcement action against Comcast at the

18  ITC. *Id*. ¶ 90; *see also Certain Digital Video Receivers and Hardware and Software*

19  *Components Thereof*, Inv. No. 337-TA-1001, Complaint (USITC April 6, 2016).

20  There, Administrative Law Judge Shaw found Comcast's X1 set-top boxes infringed

21  two of Rovi's patents; the Commission affirmed the holding; and the parties are

22  awaiting the Federal Circuit's decision on Comcast's appeal. *Id*. ¶ 90.

23      With Comcast continuing to infringe Rovi's portfolio of patents, on January 10,

24  2018 Rovi brought the -253 case before this Court and the -10056 case before the

25

District of Massachusetts. *Id*. ¶ 91. *See Rovi Guides, Inc. v. Comcast Corp.*, Case No. 2:18-cv-253 (C.D. Cal.) ("the -253 case"); *Veveo, Inc. v. Comcast Corp.*, Case No. 1:18-cv-10056 (D. Mass.) ("the -10056 case"). As with the first round of litigation, Rovi then brought an enforcement action against Comcast at the ITC, where Administrative Law Judge McNamara found that Comcast had infringed one of Rovi's valid patents. *See Certain Digital Video Receivers and Related Hardware and Software Components*, Inv. No. 337-TA-1103, Complaint (USITC Feb. 8, 2018); *Certain Digital Video Receivers and Related Hardware and Software Components*, Inv. No. 337-TA-1103, ID/RD (USITC June 4, 2019). The two district court cases are stayed pursuant to the statutory, mandatory stay pending a final decision from the Commission.

On January 14, 2019, with Comcast still continuing to infringe Rovi's patents, Rovi again brought suit before this Court, filing the -275 case. *Rovi Guides, Inc. v. Comcast Corp.*, Case No. 2:19-cv-275 (C.D. Cal.) ("the -275 case"). Rovi then filed the -3096 case on April 22, 2019, its eighth enforcement action against Comcast since 2016 and third before this Court. *Rovi Guides, Inc. v. Comcast Corp.*, Case No. 2:19-cv-3096 (C.D. Cal.) ("the -3096 case"). The -3096 case is stayed pending resolution of Rovi's third ITC enforcement action against Comcast per the mandatory statutory stay. *See Certain Digital Video Receivers, Broadband Gateways, and Related Hardware and Software Components*, Inv. No. 337-TA-1158, Complaint (USITC April 26, 2019).

Across these nine enforcement actions spanning over three years, Comcast and Rovi have produced over one million documents and taken over 100 depositions that are subject to the Court's Protective Order and Cross-Use Agreement. Dkt. No. 80 §

20. Comcast now moves to stay this case in the name of "simplifying" and "streamlining" this action based on nothing more than the filing of two IPRs and the mere promise that they will file more IPRs in the future.

### B. The reasons Comcast has given this Court and the public for not taking a license from Rovi are false.

Comcast calls Rovi's patents "aging and obsolete," asserts that it doesn't practice Rovi's patents, and refuses to make what it calls "unreasonable payments." Buratti Decl. Ex. A; Answer ¶¶ 93-309. Why would all of Comcast's competitors license and use Rovi's portfolio if it was obsolete? Also, litigated results contradict Comcast's factual contentions of non-use. The only two actions brought by Rovi against Comcast that have proceeded to relief are the first two investigations brought before the ITC. Both resulted in Rovi winning patent infringement claims against Comcast with exclusionary and cease and desist orders being entered against Comcast. If Comcast is not using Rovi's patented technology, why would the ITC twice find that it is?

Counsel for Comcast, in response to this Court's direct questioning on what changes had been made by Comcast from what had previously been licensed, stated that "Comcast has completely changed the way the system operates through what we call the Cloud revolution." Buratti Decl. Ex. B at 10.  Because Comcast's IPG and recording functionality now lives in the Cloud and not locally with a user, we are told that Rovi's asserted patents do not cover that architecture. *Id.* at 10, 11. That factual contention is directly contradicted by the titles of five of the asserted patents themselves. They are titled "client-server based interactive [television program] guide with [remote] server recording." *See* Rovi's Am. Compl. Exs. A, D, E, F, G, and H.

1   These cloud-based inventions squarely teach and cover what Comcast now represents

2   it implemented in its X1 Platform: processing and recording on remote servers in the

3   cloud. *Id.*

4        One final point concerning Comcast's factual representations: At the status

5   conference, Comcast refused to admit that it had previously used Rovi's technology

6   even when it was a Rovi licensee for 12 years. Buratti Decl. Ex. B at 9, 10. Does it

7   make any sense that Comcast would pay hundreds of millions of dollars in licensing

8   fees and not use any of the licensed patents? Further, the features that Comcast

9   removed from its X1 system by order of the ITC were features Comcast provided to

10  its customers during the term of its last license with Rovi. So of course Comcast has

11  used the Rovi technology it licensed.

12  ### III.   LEGAL STANDARD

13       District courts have inherent authority to manage their dockets and to deny

14  requests to stay proceedings. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.

15  Cir. 1988). "'[A] court is under no obligation to delay its own proceedings by yielding

16  to ongoing PTAB patent reexaminations—even if the reexaminations are relevant to

17  the infringement claims before the Court.'" *Speakware, Inc. v. Microsoft Corp.*, Case

18  No. 8:18-cv-01293, 2019 U.S. Dist. 2019 WL 1878350, at *2 (C.D. Cal. Feb. 21,

19  2019) (quoting *Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, Case No.

20  3:14-cv-1575, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014)). Courts largely

21  consider three factors when analyzing whether to stay patent litigation pending *inter*

22  *partes* review: "(1) whether discovery is complete and whether a trial date has been

23  set; (2) whether a stay will simplify the issues in question and trial of the case; and (3)

24

25

1    whether a stay would unduly prejudice or present a clear tactical disadvantage to the

2    nonmoving party." *Universal Elecs.*, 943 F. Supp. 2d at 1030-31.

3        But the court's inquiry is not limited to these factors and instead encompasses

4    the totality of the circumstances. *Polaris Innovations Limited v. Kingston Technology*

5    *Company, Inc.*, Case No. 8:16-cv-00300, 2016 WL 7496740, at *1 (C.D. Cal. Nov.

6    17, 2016). Courts in this District aim "to ensure that cases are managed in the interests

7    of justice." *Carl Zeiss A.G. v. Nikon Corp.*, Case No. 2:17-CV-07083, 2018 WL

8    5081479, at *4 (C.D. Cal. Oct. 16, 2018). "While case law supplies these general

9    considerations, the Court ultimately must decide whether to issue a stay on a case-by-

10   case basis." *e.Digital Corp. v. Dropcam, Inc.*, Case No. 3:14-cv-4922, 2016 WL

11   658033, at *2 (N.D. Cal. Feb. 18, 2016).

12   **IV.   ARGUMENT**

13   **A.   A stay unduly prejudices Rovi and presents a tactical advantage to**

14   **Comcast.**

15       Comcast mistakenly states "A stay would not unduly prejudice Rovi as its

16   money damages claims will not be impaired." Memo ISO Mot. at 2. This statement

17   simultaneously misses the point and exposes Comcast's litigation strategy. The point

18   is not "if" but "when." By delaying any opportunity for Rovi to be awarded damages

19   in any of the filed damage actions, Comcast preserves a status quo with the following

20   adverse consequences to Rovi: (1) Rovi's patented technology is being used by

21   Comcast for free, thereby diminishing its perceived value in the marketplace; (2)

22   Rovi's patent licensing business is imperiled as Comcast's conduct is being observed

23   by other Rovi licensees whose licenses will come up for renewal in a few years; and

24   (3) Rovi is condemned to institute new and additional actions asserting more patents

25

1  until sufficient damages are awarded to require Comcast to act lawfully. *See*

2  *Intellectual Ventures I LLC v. Toshiba Corp.*, Case No. 1:13-cv-453, 2015 WL

3  3773779, at *2 (D. Del. May 15, 2015) (finding undue prejudice "[b]ecause patent

4  licensing is a core aspect of [Plaintiff's] business"); *Realtime Data LLC v. Actian*

5  *Corp.*, Case No. 6:15-CV-463, 2016 WL 3277259, at *2 (E.D. Tex. June 14, 2016)

6  ("[Plaintiff] has an interest in the timely enforcement of its patent rights."); *see also*

7  Memo ISO Mot. at 11 (acknowledging that Rovi's goal is to license its patents to

8  Comcast and Rovi already licenses to other major Pay-TV providers).

9       Additional facts demonstrate the last adverse consequence of the proposed stay

10  discussed immediately above Rovi's enforcement actions against Comcast are

11  business necessities. Rovi has been diligent in protecting its licensing business,

12  including through nine actions (in district court and at the ITC) over three years. Two

13  of these actions, both at the ITC, have reached decisions on the merits. In both

14  instances, Comcast was found to infringe Rovi's patents, and corresponding exclusion

15  orders issued. In both instances, rather than consider a license in good faith, Comcast

16  chose to remove the infringing features from its X1 Platform to circumvent the

17  exclusion order. With its willingness to strip its products and continue litigating,

18  Comcast forces Rovi to assert additional patents. A stay here would be entirely to

19  Rovi's detriment. A stay would push out the date of any possible decision of the

20  merits, and Rovi—driven by business necessity—would likely have to assert more

21  patents and engage more judicial resources in multiple forms to once again try to drive

22  this matter to resolution. In view of such prejudice, this factor weighs heavily against

23  a stay.

24

25

**B.**     **A pre-filing, pre-institution stay is premature.**

Until the PTAB decides whether to institute Comcast's promised petitions for IPR against the eight patents asserted in this case—all but two of which have yet to be filed—Comcast's request to stay should, at the very least, be postponed. Comcast seeks a broad stay based on two petitions for IPR and a mere stated intention to file others. *See* Memo ISO Mot. at 7. But the PTAB has not acted on Comcast's two petitions. Comcast also does not cite any case in which a stay was granted when the majority of the IPR petitions had not even been filed. To the contrary, courts in this district routinely deny stays requested "based on nothing more than the fact that a petition for inter partes review was filed." *Speakware, Inc. v. Microsoft Corp.*, Case No. 8:18-cv-01293, 2019 WL 1878350, at *3 (C.D. Cal. Feb. 21, 2019) (quoting *Polaris Innovations Limited v. Kingston Technology Company, Inc.*, Case No. 8:16-cv-00300,   2019 WL 7496740, at *2 (C.D. Cal. November 17, 2016)) (internal quotations omitted); *see also Uniloc 2017 LLC v. Microsoft Corporation*, Case No. 8:18-cv-2053, Dkt. No. 65 at 2 (C.D. Cal. April 29, 2019) (Guilford, J.) (denying defendant's motion to stay based on filed but not yet instituted IPRs). This is in line with the majority of courts nationwide that "have postponed ruling on stay requests or have denied stay requests when the PTAB has not yet acted on the petition for review." *KFx Med., LLC v. Stryker Corp.*, Case No. 3:18-CV-1799, 2019 WL 2008998, at *1–2 (S.D. Cal. May 7, 2019) (citing *Trover Grp., Inc. v. Dedicated Micros USA*, Case No. 2:13-CV-1047, 2015 WL 1069179, at *5 (E.D. Tex. Mar. 11, 2015) (collecting cases)).

As one court observed finding *in favor of Comcast* to deny a stay: "If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement

1    actions would be dogged by fits and starts." *Comcast Cable Commc'ns Corp., LLC v.*

2    *Finisar Corp.*, Case No. 3:06-cv-4206, 2007 WL 1052883 at *1 (N.D. Cal. Apr. 5,

3    2007). The effect of a stay would be no different here.

4              **C.    This case is not at an early stage when the multi-year, multi-**

5                      **suit Rovi/Comcast dispute about this same technological**

6                      **subject matter is considered.**

7              Comcast is technically correct when it says that not much discovery has been

8    conducted in the -275 case. Memo ISO Mot. at 7 (noting that discovery is "in its

9    earliest stages"). But the early stage of discovery in the -275 case should not weigh

10   heavily on this Court's determination given the extensive discovery already conducted

11   across this multi-year, multi-suit Rovi/Comcast dispute, including over *one million*

12   *documents and more than one hundred depositions*. The accused products in the -275

13   case are the same or nearly identical to those that have been accused in every

14   Rovi/Comcast action since 2016, and the accused functionalities are technologically

15   related to those that have already been litigated. For precisely this reason, the parties

16   agreed early on that all of that prior discovery would be available for use in the -275

17   case, including depositions. The parties memorialized that agreement in Section 20 of

18   the Protective Order. *See* Dkt. No. 80 § 20 (providing that all "[d]iscovery produced,

19   served, taken, recorded, or submitted by or on behalf of the parties in any Related

20   Litigation shall be deemed taken, produced, and usable in this action"). Considering

21   all of this preexisting, usable discovery, the stage of discovery in this case is actually

22   quite advanced and not much discovery remains to be collected. *See, e.g.*, *Carl Zeiss*

23   *A. G. v. Nikon Corp*., Case No. 2:17-CV-07083, 2018 WL 1855525, at *2 (C.D. Cal.

24   Feb. 9, 2018) (finding that production of 760,000 pages of documents and disclosure

25

1   of some expert witnesses indicated that "contrary to [d]efendants' assertion that this

2   case is in its early stages, in fact the parties have served extensive discovery already

3   and only have a short period of time left to continue their discovery efforts."); *Uniloc*

4   *2017 LLC v. Microsoft Corporation*, Case No. 8:18-cv-2053, Dkt. No. 65 at 2 (C.D.

5   Cal. April 29, 2019) (Guilford, J.) ("The -00428 case is in its early stages, but the

6   parties are conducting coordinated discovery between these consolidated matters. It's

7   unclear whether the exact stage of the -00428 case should weigh heavily when the

8   parties should already be forging ahead on discovery in the -02053 case.").

9       **D.   A stay of the entire action will only prolong this case with no**

10          **benefit of simplifying the issues.**

11      Comcast premises its argument that a stay of the entire action will simplify the

12   issues on its promise that it will file IPR petitions challenging all of Rovi's asserted

13   patents and its presumption that the PTAB will institute each of those IPRs. Rovi's

14   right to a fair and speedy resolution of its patent claims should not be denied based on

15   that conjecture. While Comcast supports its conjecture with the relative success it has

16   had in the past in the PTAB invalidating Rovi patent claims, Memo ISO Motion at 1,

17   changed circumstances at the Patent Office make prior IPR results less predictive of

18   future IPR outcomes.

19      The law governing PTAB invalidity review has changed. In April 2018, the

20   Supreme Court held the PTAB must either institute on all challenged claims or none.

21   *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). Because a challenger need

22   only show a likelihood of success as to one challenged claim in order to have review

23   of all challenged claims instituted, many claims with unimpeachable validity

24   credentials are caught up in the review. Thus, the likelihood of the PTAB finding all

25

challenged claims invalid is dramatically lowered. And as of June 2019, for FY 2019 the PTAB has instituted in just 62% of its decisions on institutions. *See* Buratti Decl. Ex. C at 6. As a result, it is unlikely that any issues will be substantially simplified for this Court. In November 2018, the Director of the PTO, recognizing that the pendulum had swung too far towards invalidating patents, promulgated a new rule abandoning the PTO's use of the prior "broadest reasonable interpretation" standard for claim construction and adopting the "ordinary and customary" standard in use by the courts. Buratti Decl. Ex. D; *see also Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Finally, this month, in an effort to stop the practice of challengers filing numerous IPRs on a single patent, the director issued guidance that "multiple petitions by a petitioner are not necessary in the vast majority of cases." Buratti Decl. Ex. E at 26-28. (This guidance cites to several of Comcast's many parallel IPR petitions against Rovi for a single patent. *Id.* at 27.) By including even the strongest patent claims in the review, narrowing the scope of the challenged claims, and discouraging multiple petitions by a challenging party, the PTAB has made it much less likely that it will find all asserted claims are invalid, which limits any potential simplification of the issues here.

Having only filed two petitions for IPR (both against just one of the eight asserted patents), and with little more than a stated intention to file more petitions in the future, Comcast is asking for what is in effect a three year stay of an active case. But no IPRs have been instituted, and so the potential "streamlining" effect of a stay is dubious at best. *See, e.g., Fulfillium v. ReShape Medical LLC*, Case No. 8:18-cv-1265, Dkt. No. 120 at 6 (C.D. Cal. May 27, 2019) ("[A]s has become clear by the parties' litigation and discovery history, a stay will not simplify the issues or conserve judicial

resources; it will merely extend them."); *Hologram USA, Inc. v. VNTANA*, 3D, LLC, Case No. 2:14-cv-9489, 2015 WL 12791513, at *3 (C.D. Cal. Dec. 7, 2015) ("[T]he undecided status of the IPR petition clouds the simplification inquiry. The fact that the petition has not yet been granted or denied makes it more difficult to predict whether the issues are likely to be simplified. Thus, this factor offers little support for granting a stay."); *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, Case No. 5:15-cv-1362, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015) ("Until the PTAB makes a decision on whether to grant the IPR petition, any argument about whether the IPR process will simplify issues in this litigation is highly speculative . . . .").

A stay will also not simplify the issues because there is considerable technological overlap between this case and the other litigation between the parties. This Court recently denied a stay in circumstances very similar to this case, where multiple coordinated cases involving the same subject matter existed. *See Uniloc 2017 LLC v. Microsoft Corporation*, Case No. 8:18-cv-2053, Dkt. No. 65 at 2 (C.D. Cal. April 29, 2019) (Guilford, J.). There this Court recognized that in cases where there is considerable "technological overlap" between coordinated cases, there is "less simplification by a stay . . . compared to other circumstances." *Id.* This case focuses on one technology: cloud DVR functionality on the cloud-based X1 Platform, which has been the subject matter of extensive prior discovery that is all usable in this case. Comcast's cloud-based technology has been relevant to all the litigations between the parties to date and continues to be relevant in the ongoing ITC investigation. As a result, the Parties have already undertaken extensive discovery on Comcast's cloud infrastructure and will, even putting this case aside, likely undertake more in the ITC case. As noted above, this discovery is subject to the Cross-Use Agreement between

the parties that pertains to all ongoing litigations. Ultimately, the technological specifics of Comcast's cloud-based X1 Platform, including the DVR functionalities here, will remain a contested issue between the parties even with a stay of this case. In light of the ongoing litigation between the parties involving the same technologies and cloud-based infrastructure, a stay will not simplify the issues here.

Additionally, it is unlikely all the asserted claims challenged in Comcast's (still forthcoming) IPRs will be canceled or even instituted to begin with, as strongly suggested by the fact over two-thirds of the 35 IPRs from Comcast's most recent wave of IPRs were denied institution. And once Comcast's petitions are rejected or after any claims survive IPRs, Comcast will still make validity challenges. In its opening brief, Comcast notes it will file motions for judgment on the pleadings under 35 U.S.C. § 101 and summary judgment motions. Memo ISO Mot. at 7-8. Tellingly, Comcast does not state its summary judgment motions would be limited to infringement or other non-invalidity-based defenses after a stay. As such, stay or not, the Court is going to face the same procedures, the same motions, and ultimately the same burdens.

Even if some issues in this case are ultimately narrowed through the IPR process, nearly all of the discovery at issue will still be relevant to the non-instituted claims, given that this case narrowly focuses on cloud DVR functionality in the cloud-based X1 Platform. In other words, a stay makes little sense at this point, because the issues will not be simplified, but rather the case merely prolonged. Instead, under Rovi's proposed bifurcation approach, any issues that can potentially be simplified will be through a stay of only the patents that are, in fact, instituted.

1    Not only would a stay fail to simplify the issues, it may actually increase the

2    issues. Strange but true. The portfolio Comcast refused to license in 2016 contains

3    over a thousand patents, and the clock continues to run for Comcast's infringement of

4    other Rovi patents. To the extent this case is stayed, Rovi will be forced to file more

5    enforcement actions against Comcast, expending judicial resources in both this Court

6    and others around the country in order to preserve Rovi's damage claims and protect

7    Rovi's intellectual property rights. Accordingly, when considering the overarching

8    conflict as a whole, a stay would likely increase the issues for judicial decision and

9    increase the expenditure of valuable judicial resources, without incentivizing the

10   parties to work towards the only possible resolution to all cases—a negotiated

11   settlement.

12       **E.    The alternative relief Rovi proposes is the fair and appropriate**

13               **disposition of Comcast's motion to stay.**

14       This Court actively and creatively manages cases. This Court is a hands on

15   Court. By virtue of prior case assignments, this Court is singularly positioned to

16   effectively manage this extended, nationwide, multi-case dispute to resolution.

17       Often a defendant will only get serious about resolving a dispute if it confronts

18   trial. The sooner Rovi's district court cases against Comcast proceed to trial, the

19   sooner a business resolution will be fashioned and the sooner all of this litigation will

20   end. Comcast's motion to stay is its most recent effort to delay judgment day.

21       Rovi is not unmindful of the potential judicial economies in staying that portion

22   of a patent case that is the subject of an instituted IPR review. But we are not there

23   yet. And, in the event the PTAB actually institutes IPR review, there are procedural

24   ways to capture those economies while allowing Rovi to expeditiously proceed to

25

judgment. If Comcast files its promised IPR petitions on all asserted claims and if an IPR on all claims of one or more patents is subsequently instituted by the PTAB, the Court could then consider all its procedural options, including bifurcating this action pursuant to Rule 42(b) of the Federal Rules of Civil Procedure between those patents for which validity review of all asserted claims have been granted by the PTAB and all other asserted patents. Whether such bifurcation is the proper, the best procedural approach can only be known later, when the full extent of the PTAB's institution decisions on all of the asserted patents becomes known. If the Court at that time determines bifurcation is appropriate, an order could then be entered staying all proceedings on the IPR review patent(s) and the case could otherwise proceed expeditiously to judgment.

## V.   CONCLUSION

Thus, taken together, the unique circumstances of this case as part of a larger global patent licensing dispute between the parties, the indeterminate status of Comcast's petitions for IPR, the extensive discovery already exchanged between the parties, the diminished likelihood of institution by the PTAB, and the overlap in subject matter between this case and other ongoing cases weigh against a stay here. The Court should deny Comcast's motion to stay without prejudice and order the parties to submit a joint status report to the Court ten days following the last institution decision of the PTAB concerning all of the patents currently asserted in this litigation. That joint status report should contain: (1) a joint statement of the parties concerning the institution decision by the PTAB on each of the asserted patents and (2) each party's separate recommendation concerning whether a stay should issue,

1   what should be stayed, whether bifurcation is appropriate, and any other procedural

2   recommendation any party wishes to make to the Court.

DATED: July 29, 2019

Respectfully submitted,
MCKOOL SMITH, P.C.


*/s/ Roderick G. Dorman*
Roderick G. Dorman (SBN 96908)
rdorman@mckoolsmith.com
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
(213) 694-1200 / (213) 694-1234 (fax)

Douglas A. Cawley (*pro hac vice*)
dcawley@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000 / (214) 978-4044 (fax)

Joshua W. Budwin (*pro hac vice*)
jbudwin@mckoolsmith.com
John B. Campbell (*pro hac vice*)
jcampbell@mckoolsmith.com
Leah B. Buratti (*pro hac vice*)
lburatti@mckoolsmith.com
R. Mitch Verboncoeur *(pro hac vice)*
mverboncoeur@mckoolsmith.com
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700 / (512) 692-8744 (fax)

*ATTORNEYS FOR PLAINTIFF* ROVI
GUIDES, INC.